AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:   510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
MEREDITH BRIGHT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEREDITH BRIGHT<br><br>    Plaintiff,<br><br>v.<br><br>MENDOCINO FARMS LLC,<br><br>    Defendant. | CASE NO.<br>Civil Rights<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MEREDITH BRIGHT complains of Defendant MENDOCINO FARMS LLC, and alleges as follows:

1.      **INTRODUCTION:**  On August 15, 2023, Plaintiff, who is disabled and uses a service dog, attempted to enjoy dinner out with her friend at a brand-new Mendocino Farms restaurant located at 1895 Ygnacio Valley Road, Walnut Creek, California.  However, Defendant's employee, who represented himself as a manager, refused to allow the disabled Plaintiff to eat inside the restaurant, and demanded that she eat on the patio due to the presence of her service dog Izzy.  Despite Plaintiff's efforts to explain the laws surround service animals to Defendant's employee, he would not allow her to eat inside the restaurant, and he informed her

1  that it was "company policy" not to allow service dogs to eat inside Mendocino Farms
2  restaurants.  This lawsuit seeks injunctive relief and damages against the owners and operators of
3  Mendocino Farms for denying full and equal access to Plaintiff Meredith Bright, a disabled
4  person who uses a service dog.

5       2.     Plaintiff enjoys going out to eat with friends at local restaurants in and near
6  Walnut Creek.  This particular restaurant is very near to Plaintiff's home, and she was very
7  excited about the opening of a restaurant with healthy options such as Mendocino Farms within
8  walking distance of her home.  She intends to return to patronize Mendocino Farms but cannot do
9  so until the policies of the restaurant are made accessible to disabled individuals who use service
10 dogs, including revision of its service dog policies and necessary employee training and/or re-
11 training.  She has brought this lawsuit to force Defendant to change its discriminatory and illegal
12 policies and compensate her for refusing to allow her to eat her food inside the restaurant because
13 she is a disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an
14 injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a
15 qualified service dog at Mendocino Farms.

16      3.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC
17 sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law
18 pursuant to 28 U.S.C. § 1367.

19      4.     **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is
20 proper because the real property which is the subject of this action is located in this district and
21 that Plaintiff's causes of action arose in this district.

22      5.     **INTRADISTRICT:**  This case should be assigned to the Oakland intradistrict
23 because the real property which is the subject of this action is located in this intradistrict and
24 Plaintiff's causes of action arose in this intradistrict.

25      6.     **PARTIES:**  Plaintiff Meredith Bright is a "qualified" disabled person.  She suffers
26 from Elhers-Danlos Syndrome which is a connective tissue disease which affects her mobility,
27 balance, ability to bend, and circulatory system. She also suffers from Postural Orthostatic
28 Tachycardia Syndrome (POTS) which is a condition that causes symptoms such as accelerated

1  heart rate and dizziness when she transitions from lying down, sitting, and standing positions and
2  Post-traumatic Stress Disorder (PTSD).  Plaintiff relies upon her service dog, a Belgium Malinois
3  named "Izzy," to assist her with certain tasks to help her manager her POTS and PTSD
4  symptoms. Izzy has been trained to monitor Plaintiff for rises and falls in her heart rate. If
5  Plaintiff's heart rate rises, Izzy alerts Plaintiff by making eye contact with, nudging, or pawing
6  her. If Plaintiff ignores Izzy's signals, she is trained to bark once at Plaintiff. Izzy is also trained
7  to hug Plaintiff when she is signaled to do so, lick Plaintiff to disrupt behaviors associated with
8  her PTSD and panic attacks, and lean on Plaintiff when Izzy senses Plaintiff is displaying
9  symptoms of anxiety.  Izzy was professionally trained by North County Canine for behavior, and
10 Plaintiff has personally trained Izzy to perform the specific tasks she needs.  Plaintiff has
11 extensive personal experience training dogs, and she continues to reinforce Izzy's training daily.
12 Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. §
13 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

14     7.    Defendant MENDOCINO FARMS, LLC is and was at all times relevant to this
15 Complaint the owner, operator, lessor and/or lessee of the subject business, property and building
16 located at 1895 Ygnacio Valley Road, Walnut Creek, California., known as Mendocino Farms.

17     8.    Mendocino Farms is a place of "public accommodation" and a "business
18 establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C.
19 section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code
20 sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

21     9.    **FACTUAL STATEMENT:**  Plaintiff Meredith Bright has been training and
22 working with her service dog Izzy for 2.5 years.  Izzy is a Belgium Malinois who was
23 individually trained to be a service dog.  Plaintiff trained and continues to train Izzy to serve her
24 specific needs throughout their relationship.  Izzy is specifically trained to assist Plaintiff with
25 certain tasks to help her manager her POTS and PTSD symptoms including alerting Plaintiff to
26 heartrate fluctuations, hugging Plaintiff on when she is signaled to do so, lick Plaintiff to disrupt
27 behaviors on command, and lean on Plaintiff when Izzy senses Plaintiff is displaying symptoms
28 of anxiety, such as shaking or crying, to disrupt panic attacks.

10. Izzy is a working dog; she is not a pet. Plaintiff and Izzy have trained extensively together, and they supplement that training daily. Plaintiff takes Izzy almost everywhere with her in public. It is important they stay together as much as possible because (a) Izzy provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Izzy goes. Below is a photograph of Izzy the day that she and Plaintiff were denied access at Mendocino Farms that clearly shows her collar reads "Working K9:"



11. On August 15, 2023, Plaintiff and her friend Callie went out for dinner between 7:30 and 8:00 pm at Mendocino Farms located at located at 1895 Ygnacio Valley Road, Walnut Creek, California. The restaurant had recently opened. It is very near Plaintiff's home, so she wanted to try it out.

12. Plaintiff drove her vehicle to Mendocino Farms, and she parked her vehicle in the designated accessible parking space in the parking lot for the restaurant. Plaintiff, Izzy, and Callie approached the entrance to Mendocino Farms. There was a stand with menus at the entrance, so Plaintiff grabbed a menu and entered the restaurant.

13. Plaintiff got in line to order her food at the cashier counter. Izzy was on a leash, and she was wearing a collar which read "working K9." Izzy was working, and she was completely under Plaintiff's control.

14. One of Defendant's employees approached Plaintiff and Izzy and asked Plaintiff if Izzy is a service dog. Plaintiff responded that Izzy is her service dog, and the employee left without further questioning Plaintiff.

15. Plaintiff continued to wait in line with Izzy. When she was near the front of the line, Plaintiff was approached by "Ross" who identified himself as a manager at Mendocino Farms. Ross initiated a conversation with Plaintiff by welcoming her to Mendocino Farms. Then, Ross informed Plaintiff that it was "company policy" that no patrons accompanied by dogs, even service dogs, were allowed to eat in the interior dining area at Mendocino Farms.

16. Plaintiff told Ross that such a policy was illegal and contrary to the ADA and state access laws. Defendant's manager told Plaintiff that she was welcome to have Izzy with her on the exterior patio area, but she would not be allowed to eat inside the restaurant with her service dog.

17. Plaintiff and her friend consulted, and they decided to order their food to go. It was a hot day reaching 97 degrees earlier in the afternoon. At 8:00, it was still approximately 85 degrees with 68% humidity, making it feel like 93 degrees according to World Weather website at https://world-weather.info/forecast/usa/walnut_creek/15-august/. Neither Plaintiff nor her friend wanted to sit outside in the muggy heat. Due to her disability, Plaintiff is sensitive to excessive temperatures. Additionally, Plaintiff's friend was seven months pregnant at the time, and she was not interested in sitting outside either.

18. After Plaintiff had finished ordering her food to go, Ross approached her again. He gave Plaintiff his business card and suggested that they could "have a conversation." Plaintiff told Defendant's manager that unless there he was going to follow the law and allow her to sit in the interior dining area of the restroom with her service dog there was nothing to talk about. Defendant's manager reiterated that Plaintiff would only be able to sit outside on the patio if she was accompanied by her service dog.

19. Plaintiff went to the fountain drink dispenser and filled up her cup. Then, she exited Mendocino Farms to wait in her car until her food was ready for her to pick it up. Izzy was very well behaved the entire time she was inside Mendocino Farms.

20. When Plaintiff and her friend were alerted by text message that their food was ready, Plaintiff's friend went inside to pick up the food. Plaintiff did not want to draw any further attention to herself and Izzy by being forced to have further conversations with any of Defendant's employees.

21. Plaintiff felt upset, humiliated, and defeated. Since it was clear that Plaintiff and her friend were not allowed to eat inside the climate-controlled restaurant, they went to a nearby brewery that allowed outside food to be consumed inside their establishment. The brewery welcomed Plaintiff's service dog, and Izzy behaved beautifully.

22. Plaintiff genuinely enjoyed the food she had from Mendocino Farms. She wishes to return to Mendocino Farms, but only *after* Defendant's have implemented proper service animal policies and training of its staff. Plaintiff is deterred from returning to the bar until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq*.)**

23. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 22, above, and incorporates them herein by reference as if separately repled hereafter.

24. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

25. The ADA provides, "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

26. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

27. Mendocino Farms is a public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(B).

28. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

29. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service-animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

30. Defendant has a policy and practice of denying access to patrons with service animals.

31. On information and belief, as of the date of Plaintiff's most recent visit to Mendocino Farms on or about August 15, 2023, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

32. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"),

Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

33. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant, bar, or other establishment serving food or drink." 42 USC § 12181(7)(B).

34. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

35.  The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law. In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

36.  On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

37.  Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing Mendocino Farms and discriminated and continues to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the

full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

38. Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*, Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

39. Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize Mendocino Farms, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

40. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 39 of this Complaint and incorporates them herein as if separately re-pleaded.

41. At all times relevant to this action, the Unruh Civil Rights Act, California Civil

Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

42. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

43. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

44. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

45. The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory and compensatory to Plaintiff, according to proof.

46. **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore

seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

47. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

48. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 47 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

49. Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

50. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

51. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

52. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

53. Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

54. Mendocino Farms is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

55. Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this large public accommodation and place of business based upon Defendant's illegal prohibition of her legally protected use of her service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities. Plaintiff is unable to return to Mendocino Farms until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since August 15, 2023, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

56. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and

omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled, including mobility disabled individuals who require the assistance of service animals, from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

57.     Plaintiff wishes to return to patronize Mendocino Farms but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize Mendocino Farms and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled persons and disabled individuals who require the assistance of a service animal.

58.     The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

59.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

and other law, all as hereinafter prayed for.

60. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize Mendocino Farms and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

61. Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of their duties to refrain from establishing discriminatory policies against physically disabled persons, prior to the filing of this complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

62. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public,

justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

63. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on her deterrence from returning to Mendocino Farms.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Meredith Bright prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and use the services of Mendocino Farms;

    c. That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent

injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

d. An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5. An award of prejudgment interest pursuant to Civil Code § 3291;

6. Interest on monetary awards as permitted by law; and

7. Grant such other and further relief as this Court may deem just and proper.

Date: November 20, 2023                                    REIN & CLEFTON

                                                             */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
MEREDITH BRIGHT

//
//
//
//

17

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: November 20, 2023        REIN & CLEFTON

                                                                */s/ Aaron M. Clefton*
                                                                By AARON M. CLEFTON, Esq.
                                                                Attorneys for Plaintiff
                                                                MEREDITH BRIGHT

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES